UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

K.T., individually and as parent and
natural guardian of her infant children John Doe and Jane Doe,

                          Plaintiff,                                    **COMPLAINT**

                                                               1:22-cv-230 (TJM/CFH)

        - against -

BOARD OF EDUCATION OF QUEENSBURY UNION
FREE SCHOOL DISTRICT, QUEENSBURY UNION FREE
SCHOOL DISTRICT, SUPERINTENDENT KYLE GANNON
in his individual and official capacity, ASSISTANT
SUPERINTENDENT AMY GEORGEADIS in her individual
and official capacity; ASSISTANT SUPERINTENDENT
DENISE TROELSTRA in her individual and official capacity,
KENNETH BEE in his individual and official capacity, MONIQUE
AGANS in her individual and official capacity, MICHAEL
BRANNIGAN in his individual and official capacity,

                          Defendants.

_____

       Plaintiff, by and through her undersigned counsel, sets forth the following as her

Complaint against the defendants:

## **BACKGROUND**

1.      K.T. is the mother of infant plaintiffs John Doe and Jane Doe, who at all times

relevant to this Complaint were students attending the William H. Barton Intermediate School, a

school that is part of the Queensbury Union Free School District (hereinafter the "QUFSD")

2.      On January 29, 2021 the infant plaintiffs (then 5th grade students) reported that a

6th grade student encouraged them to engage in a sexual act. The specific language spoken was

"You should let your sister suck your penis."

3.      This incident occurred on Bus number 233.

4.     Defendant Kenneth Bee was the bus driver at the time of this incident. Defendant Bee, and his supervisors, had previously been made aware of countless acts of sexual behavior, harassment and bullying on the bus, and, later on, admitted that they "knew there was an issue" yet the behavior never stopped.

5.     School officials were promptly notified of the incident.   School officials claimed that they performed a prompt and thorough investigation and assured K.T. that they had taken action to prevent recurrence of the problem.   School officials stated that they had reviewed video footage from the bus in question; that no other improper conduct had occurred; and, that this was an isolated incident.

6.     K.T. was skeptical because (a) she had made a prior complaint about bullying and harassment on this same bus (yet problems continued); (b) she had heard from other parents regarding inappropriate behavior on this bus; and, (c) based upon her children's behavior, it was suspected that more was going on.

7.     For example, infant plaintiff Jane Doe, after this incident on the bus, asked to move her bed away from the windows of her bedroom, exhibited signs of fear and anxiety, and, lashed out in frustration when questioned about the incident.

8.     Many months later it was learned that, on January 29, 2021, this same student also stated to Jane Doe. "I will rape you and your mom." School officials were aware of this comment in February of 2021.   Yet, it was never documented, never investigated, and, never reported.

9.     Further, and quite shockingly, the School actively misled K.T. by denying anything else was said and even going so far as to show a partial clip of the bus footage (in

which this threat and harassment was not heard) to avoid confronting this highly threatening and outrageous comment.

10.     Further, once K.T. was given the opportunity to view the full footage from the bus that day it was apparent that the bus driver (defendant Kenneth Bee) had no control over the students on the bus as (a) kids repeatedly could be heard yelling out the word "rape" (b) children were watching and discussing pornography (c) children were openly talking about sexual acts, (d) students were engaging in violent and threatening behavior, bullying other students by making fun of their appearances and other demeaning behavior.

11.     Investigation to date has revealed that the School District knew of several incidents on this bus and the harasser in particular but took no action to stop the abuse; that the School District lied to K.T. repeatedly regarding the seriousness of the conduct involved; and, has covered up their negligence, recklessness and lies by failing to document, investigate, and report incidents to the State Education Department.

12.     Upon information and belief the District has intentionally discarded bus video footage despite knowing that review of months' worth of bus footage for this specific bus route would be relevant and particularly strong evidence to support the claims of plaintiff in this case.

13.     In passing the New York State Human Rights law, the Legislature found and declared:

> that the state has the responsibility to act to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants.

14.     The protections of the Human Rights Law extend to all students that attend a public school in the State of New York, such as QUFSD.

15.     As relevant to this matter, the State has declared that it is an "unlawful discriminatory practice" for a School to permit the harassment/discrimination of any student by reason of his/her sex, gender, disability (physical or mental health condition), or sexual orientation.

16.     The State has also declared it to be an "unlawful discriminatory practice" for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

17.     Retaliation for complaints of harassment or discrimination is likewise unlawful pursuant to the New York Human Rights law.

18.     Parents leave their children in the custody and care of a School expecting that the School will protect them and provide their children with an education free from harassment, discrimination, intimidation, ridicule, abuse, violence, and threats.

19.     QUFSD, and the co-defendants in this case, completely failed to protect the infant plaintiffs despite having actual knowledge that the infant plaintiffs and other similarly situated students were being terrorized and traumatized at School, and, specifically on the school bus.

20.     New York State requires school districts to report certain data for the expressed purpose of keeping kids safe.

21.     For example, school districts are required to report any incidents involving sexual offenses, assaults, discrimination, harassment and bullying, as well as cyber bullying.

22.     As described by the New York State Education Department:

4

The New York State Education Department's (SED's) School Safety and the Educational Climate (SSEC) Summary Data Collection Form is a part of SED's implementation of the Dignity for All Students Act (DASA) and Violent or Disruptive Incident Reporting (VADIR). Data regarding violent or disruptive incidents, as well as incidents of, discrimination, harassment, bullying, and cyberbullying, is compiled to comply with New York State reporting requirements and to designate schools that are persistently dangerous. (8-CRR-NY §120.5)

All public schools, boards of cooperative educational services, charter schools, and county vocational education and extension boards are required to document incidents occurring on school property, including incidents occurring in, or on, a school bus (as defined in Vehicle and Traffic Law §142), and at school functions.

23.    With regard to incidents involving discrimination, harassment, or bullying behavior, all verified incidents must be reported regardless of any disciplinary action taken. These incidents are required to be reported School Safety and Educational Climate (SSEC) Incidents

24.    Despite the mandatory reporting required by school districts, many schools underreport the number of incidents.

25.    The incentive to underreport incidents is strong as schools lose funding, and, school administrators tend to lose their jobs when they are deemed a dangerous or unsafe school.

26.    The QUFSD is one such school district that underreports incidents.  In fact, for the 2020-2021 school year, the school reported zero incidents, despite the undisputable fact that K.T. reported the harassment/discrimination of her children and an investigation under Title IX concluded that the complaint of harassment and discrimination was "founded."

27.    The infant plaintiffs first attended the William H. Barton Intermediate School in the fall of 2020 (the family had relocated from the Hudson Falls School District at that time).

28.    K.T. first became aware of a potential problem on the bus in October of 2020 when her daughter Jane Doe informed her that kids on the bus were being very mean to John

Doe and that it had been going on for a while.   K.T. promptly sought help by reporting the incident to the School:   she was promised that the issue would be taken seriously.   It wasn't.

29.    Instead, over the period of October 2020 through the end of school in June 2021 the infant plaintiffs were terrorized on a daily basis on that bus, and, K.T. was lied to, fraudulently deceived, and, had numerous threats and retaliation aimed at her for seeking information and a better school environment for her children at all times leading up to this filing.

30.    QUFSD permitted an atmosphere of discrimination to permeate the educational program. This deprivation of civil rights resulted from the school district's custom and widespread practice of discouraging discrimination, bullying, and/or Title IX investigations and failing to adequately address sexual harassment. This is a well-settled district-wide practice that constitutes a standard operating procedure of QUFSD.

31.    As the final decision maker, Superintendent Kyle Gannon turned a blind eye to an obviously inadequate practice that was likely to result in the violation of constitutional rights and further harm to students. He made a subsequent deliberate choice to deny a new district-level investigation with an investigator not employed by the school district offered at the appeal level.

32.    A deliberate choice by an individual government official constitutes government policy if the official has been granted final decision-making authority concerning the relevant area or issue.

33.    This decision has caused the deprivation of rights at issue by school board policies which affirmatively command that it occur, and by acquiescence in a longstanding practice which constitutes the standard operating procedure of discouraging Title IX complaints.

34.    As a brief overview of the claim, in addition to the above-referenced comments

6

and behavior:

35.     Jane Doe has reported that the same student identified in the January 29th incident has repeatedly asked about her vagina.   She is unable, fearful, or unwilling to explain specific details regarding this.

36.     John Doe and Jane Doe have also reported numerous and continuous use of the word "rape" on the bus, use of language such as "lesbian" and graphic accounts of pornography and/or sexual behaviors.   It is noteworthy that the infant plaintiffs were attending the Intermediate school (4th and 5th grade) but rode the bus with children and young adults in 4th to 8th grade.

37.     John Doe has repeatedly been called gay, ugly, and, had his physical appearance demeaned by kids making fun of his hives (which is not only a covered disability but is also caused by the very bullying he has been repeatedly subjected to).

38.     John Doe numerous times made threats or discussed hurting himself to School officials yet nothing was reported or done.

39.     Upon information and belief both John Doe and Jane Doe have been exposed to physical and/or sexual contact but are too fearful to come forward because of the manner in which the School treated them throughout this process.

40.     Due to the abuse and retaliation, the family decided to place their children back in the Hudson Falls Central School for the school year starting in Fall of 2021.   However, on August 28, 2021 K.T. received a letter from Hudson Falls stating "Unfortunately, at this time we can not accommodate your request." with no further explanation.

41.     K.T. called Daniel Ward, the Hudson Falls school superintendent several times to

7

ask what happened and he did not respond.  Upon information and belief,  Karla Buettner, attorney for the QUFSD, also represents Hudson Falls School District, and it is alleged that the decision is the result of Attorney Buettner's actions.

42.    It is noteworthy that Karla Buettner works for the law firm of Bartlett, Pontiff, Stewart & Rhodes, P.C., the law firm that appeared and defended the QUFSD at the administrative hearing related to this matter, even though she and her law firm were put on notice of a conflict of interest in this case.

43.    In addition, Queensbury School officials called child protective services on K.T. after she refused to return her kids to a hostile educational environment and after her attempt to get them re-enrolled at Hudson Falls was surprisingly denied at the last minute despite no reason given and all prior indications were that the School would love to have them back.

44.    On May 24, 2021 K.T. filed a complaint with the United State Department of Education, Office for Civil Rights, located at 32 Old Slip, 26th Floor, New York, NY 10005.   A copy of the "Synapsis" she sent to OCR is attached as **Exhibit A.**

45.    K.T. has dozens of recordings and emails in addition to the materials contained in Exhibit A to support all of the claims listed above, including the attempts by the School and its officials to cover up the abuse and actively make the pain and suffering inflicted by the students worse by failing to provide timely and accurate information to plaintiff and other similarly situated parents.

46.    Plaintiff timely filed a Notice of Claim and more than thirty days has elapsed without settlement or adjudication of the claim.

**PARTIES**

8

47.     Plaintiff K.T. is an individual who resides in Warren County, State of New York. K.T, is the mother and guardian of the infant plaintiffs John Doe and Jane Doe.

48.     Defendant Board of Education of Queensbury Union Free School District is the governing body for the Defendant Queensbury Union Free School District, a public school with its principal place of business and residence located at 429 Aviation Road, Queensbury, NY 12804.

49.     Defendant Kyle Gannon is the Superintendent of Schools for the QUFSD.

50.     Defendant Amy Georgeadis is an Assistant Superintendent of Schools for the QUFSD.

51.     Defendant Denise Troelstra is an Assistant Superintendent of Schools for the QUFSD.

52.     Defendant Kenneth Bee was at all times relevant to this Complaint a bus driver for the bus route at issue in this litigation.

53.     Defendant Monique Agans is a school psychologist for the QUFSD.

54.     Defendant Michael Brannigan is the Principal for the Queensbury Middle School.

## JURISDICTION

55.     Jurisdiction of the Court is invoked under 28 U.S.C. §§1331 and 1343.

56.     Title IX of Educational Amendments of 1972, 20 U.S.C. § 1681 et seq ("Title IX") provides: "No person in the United States shall on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."   It is alleged that the QUFSD receives federal financial assistance in the context of providing services to children such as the

infant plaintiffs.

57.     This Court has supplemental jurisdiction over any and all New York State based claims pursuant to 28 U.S.C. 1367,

58.     Pursuant to 28 U.S.C. §1391, venue properly lies in the United States District Court for the Northern District of New York, as this is the district where the parties reside and where the events complained of occurred.

## BASIS OF CLAIMS

59.     This is a claim for harassment; bullying; retaliation; aiding and abetting; negligence; negligent supervision; gender discrimination; disability discrimination; declaratory judgment seeking to annul any alleged non-disclosure agreement; injunctive relief: preventing the School and its officials from any further attempts to silence parents in their District, to cover up discrimination, harassment and bullying in the District, and refusing to provide records and information in a timely and complete manner so parents can adequately protect their children.

60.     It is alleged that all individual defendants had knowledge of the bullying/harassment endured by the infant plaintiffs yet failed to take appropriate action to address the serious situation, thereby condoning the behavior and sending a message that the behavior was acceptable.

61.     On a systemic basis, the QUFSD and the individual defendants failed its students in general, and, the infant plaintiffs in particular by ignoring an ongoing and recurring issue of bullying, harassment and discrimination in the District.

62.     It is alleged that the QUFSD officials and individual defendants were well aware of an ongoing problem on this specific bus, and, more globally, aware of numerous problems

throughout the District related to discrimination, harassment and bullying yet failed to take the actions necessary to prevent recurrence of problems.

63.     The School Board was notified on several occasions regarding the failures of the Superintendent, Assistant Superintendents, School Psychologist, Bus Driver and Principal.

64.     Upon information and belief, not one disciplinary action has occurred to remedy or punish these offenders for their reprehensible conduct:   any reasonable Board of Education would have undertaken a prompt and thorough investigation into the handling of the complaints alleged herein and any reasonable view of the facts would have led to the immediate dismissal of the individual defendants named herein.   The failure to promptly investigate, document, report, and take remedial action results in condonation of all bad acts alleged, and, establishes a complete failure of the School Board to perform its duties.   This also causes a conflict of interest between the Board and the each and every individual defendant in this case since judgment can and will be sought after each entity and individual separately and each such party has an incentive to protect itself versus the other parties.

65.     In addition to the claims outlined above, the following is alleged:

    a.     Negligent failures to properly monitor, supervise, train and educate the individual defendants and the school staff;

    b.     Failure to properly implement policies and training to QUFSD staff to detect potential abuse.

    c.     Failure to educate staff of QUFSD concerning the prevention of sexual exploitation.

66.     Upon information and belief the primary harasser on the School Bus had previously sexually assaulted another student and on a daily basis engaged in the verbal sexual abuse reported by plaintiffs herein.   The QUFSD officials took no action; and, in doing so

encouraged and condoned the behavior to continue.

67.     Defendant QUFSD and its Board are therefore liable because they (a) failed to properly educate or train staff concerning misconduct, inappropriate behavior, inappropriate touching, and sexual exploitation; (b) had an ineffective protocol in place for investigating such misconduct; (c) refused to undertake a prompt and thorough investigation of prior reports of misconduct thereby condoning and ratifying the behavior; and, (d) failed to take effective remedial and corrective action.

68.     Plaintiff and her counsel reserve the right to ask a jury and/or judge for any damages supported by the evidence in the case during summation/closing argument at a trial. However, without waiving this right and/or objection, claimant seeks the following: compensatory damages for emotional and physical pain and suffering; terror and trauma caused by students; terror, trauma and retaliation caused by the School, which promised a safe and inviting place to receive an education yet harbored and fostered sexual activity and bullying by refusing to remedy or prevent harms; embarrassment; shame; body and sexual image issues; intimidation and retaliation after reports were made to the School; anxiety; depression; nightmares; PTSD; mental anguish; anger; inability to have close relationships with friends and family; stealing away a child's innocence; forcing a child to grow up too fast; fear; headaches; hives; insomnia; fatigue; concentration problems; loss of friends; compiled trauma; harassment by classmates; retaliation by classmates; sadness; emptiness; crying; worrying; loss of interest in activities; helplessness; hopelessness; inability to cope with life; suicidal thoughts; medical expenses for physicians and medical services and bills for other expenses, including drugs, medicines, therapy and care, which are continuing and presently unknown; increased costs to

educate, transport and care for claimant's children; potential costs to relocate the family home to provide a safe environment for the family and a sense of normalcy as well as to avoid compiled harm and trauma; loss of income due to the need for K.T. to leave her job in order to home school her children; and, any other potential consequential damages that may accrue or come about due to the actions of defendants.  For these injuries claimant currently seek $5 million dollars in damages; but, reserve the right to seek more, or less depending upon further discovery in the case, including punitive damages in any amount a jury is so inclined to award, plus attorneys' fees, costs, and disbursements.

<u>**FIRST CAUSE OF ACTION**</u>
**(Negligence)**

69.     Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

70.     Defendants had a non-delegable duty to make sure that the infant plaintiffs were properly supervised and cared for while at school.   Defendants also had a non-delegable duty to supervise other students to prevent unnecessary and foreseeable harm to the infant plaintiffs.

71.     As set forth in more detail above and in the attached <u>Exhibit A</u>, defendants failed in their duty, thereby creating and condoning a dangerous condition.

72.     It is alleged that the defendants had actual or constructive notice of other students' propensities to harass, bully, annoy and sexually exploit other students yet they failed to take appropriate actions to prevent harm to the infant plaintiffs.

73.     It is alleged that the defendants ignored obvious warning signs.

74.     It is alleged that the defendants failed to take appropriate precautions to protect

against foreseeable and/or known risks.

75.     It is alleged that the problem of school bullying, harassment and discrimination was a recurring dangerous condition because of ineffective remedial measures taken by defendants that led to an atmosphere where such behavior was accepted and tolerated.

76.     It is alleged that defendants condoned bullying, harassment and discrimination.

77.     As a result of the defendants' negligence, reckless conduct and lack of care, the infant plaintiffs suffered serious and permanent physical and emotional injuries resulting in pain and suffering, emotional trauma, and loss of enjoyment of life.

78.     As a direct and proximate result of defendants' negligence and reckless conduct, the infant plaintiffs have sustained, and, will continue to sustain significant economic losses which include medical expenses.

79.     As a direct and proximate result of defendants' negligence and reckless conduct plaintiff, as parent and natural guardian, has suffered economic loss related to increased medical costs, school costs, and relocation costs.

80.     Based on the foregoing, the plaintiffs are entitled to a judgment against defendants in an amount that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

81.     One or more exceptions to Article 16 of the CPLR are applicable herein.

**SECOND CAUSE OF ACTION**
**(Title IX against all defendants)**

82.     Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

83.     Title IX prohibits on the basis of gender the exclusion of participation in, denial of the benefits of, and discrimination/harassment in educational programs and activities.

84.     Title IX contains no exhaustion of remedies and gives plaintiff a private right of action that can be filed directly in Court.

85.     The QUFSD receives federal assistance and is therefore obligated to comply with Title IX requirements, including requirements to train employees and take reasonable action to prevent sexual exploitation.

86.     By the acts and practices described above, defendants sexually exploited and discriminated against the infant plaintiffs on the basis of gender and disability; by creating, allowing and condoning an unsafe and hostile education environment; by failing to properly train and educate; and, by refusing to take prompt remedial action to stop improper behavior and send a message that protection of children was a priority.

87.     It is alleged that the defendants had actual or constructive notice of other students' propensities to harass, bully, annoy and sexually exploit other students yet they failed to take appropriate actions to prevent harm to the infant plaintiffs.

88.     It is alleged that the defendants ignored obvious warning signs.

89.     It is alleged that the defendants failed to take appropriate precautions to protect against foreseeable and/or known risks.

90.     It is alleged that the problem of school bullying, harassment and discrimination was a recurring dangerous condition because of ineffective remedial measures taken by defendants that led to an atmosphere where such behavior was accepted and tolerated.

91.     It is alleged that defendants condoned bullying, harassment and discrimination.

92.     Based upon the foregoing, all defendants are individually and jointly liable for the violation of the infant plaintiff's Title IX rights.

93.     Plaintiff and her infant children have also been subjected to retaliation for speaking out against the manner in which the infant children were treated.

94.     Based upon the foregoing, defendants are hereby charged with violation of the Retaliation provisions under Title IX.

95.     Plaintiff respectfully requests an award of damages to compensate herself and her infant children for the emotional and physical harm, damage to reputation, loss of enjoyment of life, embarrassment, and humiliation they have suffered and will continue to suffer.

96.     Plaintiffs also request an award of attorneys' fees, costs and disbursements.

97.     Finally, Plaintiffs request an award of punitive damages because the discrimination and harassment outlined above was malicious and/or reckless acts.

**THIRD CAUSE OF ACTION**
**(Section 296 of the New York State Human Rights Law)**

98.     Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

99.     By the acts and practices described above, defendants sexually exploited and discriminated against the infant plaintiffs on the basis of gender and disability; by creating, allowing and condoning an unsafe and hostile education environment; by failing to properly train and educate; and, by refusing to take prompt remedial action to stop improper behavior and send a message that protection of children was a priority.

100.     It is alleged that the defendants had actual or constructive notice of other students'

16

propensities to harass, bully, annoy and sexually exploit other students yet they failed to take appropriate actions to prevent harm to the infant plaintiffs.

101.    It is alleged that the defendants ignored obvious warning signs.

102.    It is alleged that the defendants failed to take appropriate precautions to protect against foreseeable and/or known risks.

103.    It is alleged that the problem of school bullying, harassment and discrimination was a recurring dangerous condition because of ineffective remedial measures taken by defendants that led to an atmosphere where such behavior was accepted and tolerated.

104.    It is alleged that defendants condoned bullying, harassment and discrimination.

105.    Based upon the foregoing, all defendants are charged with violation of the New York State Human Rights Law.

106.    Plaintiff and her infant children have also been subjected to retaliation for speaking out against the manner in which the infant children were treated.

107.    Plaintiff respectfully requests an award of damages to compensate her for the emotional and physical harm, damage to reputation, loss of enjoyment of life, embarrassment, and humiliation she has suffered and will continue to suffer.

108.    Plaintiffs request an award of attorneys' fees, costs and disbursements.

109.    Plaintiffs also request an award of punitive damages because the discrimination and harassment outlined above was malicious and/or reckless acts.

**FOURTH CAUSE OF ACTION**
**(Right to Free Speech and Retaliation)**

17

110.   Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

111.   Plaintiff has a right under the Federal and New York State Constitution to speak up, and speak out, regarding the abuses and hostile education environment endured by her children while attending school at QUFSD.

112.   Plaintiff has exercised her right to make complaints about the hostile education environment both internally to the School and Board of Education, and, in public at School Board meetings.

113.   Plaintiff and her infant children have been retaliated against because plaintiff has spoken out regarding the manner in which she and her children have been treated.

114.   Plaintiff was unjustifiably required to sign a non-disclosure agreement to prevent her speaking about issues that pertained to the welfare of her own children:  information she should have been given without condition.  Such requirement by defendants was illegal and constitutes a prior restraint on free speech.

115.   By the acts and practices described above, defendants have violated plaintiff's First amendment and New York State Right to freedom of speech.

116.   Plaintiff and her infant children have also been subjected to retaliation for speaking out against the manner in which the infant children were treated.

117.   Plaintiff respectfully requests an award of damages to compensate her for the emotional and physical harm, damage to reputation, loss of enjoyment of life, embarrassment, and humiliation she and her children have suffered and will continue to suffer.

118.    Plaintiffs request an award of attorneys' fees, costs and disbursements.

119.    Plaintiffs also request an award of punitive damages because illegal behavior outlined above was malicious and/or reckless acts.

### FIFTH CAUSE OF ACTION
#### (Declaratory Judgment and Injunction)

120.    Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

121.    As set forth above, plaintiff spoke up regarding the mistreatment of her children despite defendant placing an illicit and unlawful gag order upon her.

122.    Whether such a gag order is lawful presents a "case or controversy" that this Court has jurisdiction to resolve.

123.    Plaintiff has standing to bring a claim for declaratory judgment and an injunction because she has been adversely affected by the overbearing action of the QUFSD in requiring the gag order to be put in place as a condition for her reviewing and receiving information that she, as a mother, should have been provided without condition.

124.    In this case QUFSD required plaintiff to sign a non-disclosure in order to view the bus video in which her children were victimized and traumatized.

125.    QUFSD required the non-disclosure and threated litigation and financial ruin if plaintiff spoke out regarding the events depicted in the video she watched.

126.    A bona fide justiciable and substantial controversy exists as the parties disagree on the important question regarding the legality of the gag order.

127.    Based upon the foregoing plaintiff seeks a ruling that (a) the gag order (nondisclosure agreement) she was required to sign is unenforceable; and, (b) defendants are

restrained and enjoined from requiring such gag orders in the future.

128.    Plaintiff also seek damages for the breach of her rights as determined by a jury together with attorneys' fees, costs, and expenses of this litigation.,

WHEREFORE, plaintiff demands judgment against the Defendants as set forth above, together with the costs and disbursements of this action, and for such other and further relief as to the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.

Dated:   March 10, 2022

FINN LAW OFFICES
Attorneys for Claimant

By:_____
        Ryan M. Finn, Esq.
P.O. Box 966
Albany, NY 12201
Ph: 518.928.1152
Cell: 518.210.7902
Fax:   518.677.1155
Ryan@LawFinn.com
www.LawFinn.com


        * Physical location:   12 Sheridan Avenue
                               Albany, NY 12207